**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

WENDY KERNECHEL,

     Plaintiff,

v.

UNITED STATES OF AMERICA and
OFFICER JIMMY HIGHSMITH,

     Defendants.

CIVIL ACTION

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff sues Defendants and alleges as follows:

**<u>Jurisdiction</u>**

1.    This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and 28 U.S.C. §2671, et. seq., Federal Tort Claims Act.

2.    Plaintiff filed a claim under the Federal Tort Claims Act that was accepted for filing on March 26, 2019 (attached as Exhibit A), which claim was not honored within six months.

3.    Plaintiff has exhausted her available administrative remedies and obtained all the relief that the administrative remedies could afford.

4.    Plaintiff has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

**Parties**

5. At all times material hereto, Plaintiff WENDY KERNECHEL was an inmate of the Bureau of Prisons (BOP), confined in Federal Corrections Institution Tallahassee (FCI Tallahassee) within the Northern District of Florida.

6. At all times material hereto, Defendant JIMMY HIGHSMITH was a unit officer at FCI Tallahassee, in the Northern District of Florida.

7. At all times material hereto, Defendant UNITED STATES OF AMERICA owned and operated a corrections facility known as FCI Tallahassee and were the employers of Defendant JIMMY HIGHSMITH.

**Common Allegations of Fact**

8. During the year 2018, Plaintiff WENDY KERNECHEL was an inmate at FCI Tallahassee, a federal corrections facility under the care and custody of that facility and was a person to whom Defendants owed a duty of care.

9. During 2018, Defendant Jimmy Highsmith was a corrections officer at FCI Tallahassee with duties involving the care and custody of Ms. Kernechel.

10. Empowered by his position and abetted by other prison officials, Highsmith took the opportunity to have sexual intercourse with Ms. Kernechel on at least ten occasions between July and September of 2018.

11. Highsmith had a longstanding and known practice of propositioning young female inmates at FCI with intimations of both favors and threats.

12. Prison security was aware of credible evidence of abuse by Highsmith of several inmates and settled at least one case but continued to employ him.

13. Sometime toward the end of June 2018, Highsmith was assigned as the unit officer where Kernechel worked as a unit orderly.

14. The assignment gave Highsmith a highly favorable opportunity to prey on vulnerable young women with minimal exposure to discovery.

15. Highsmith noticed Kernechel and began speaking with her, asking her personal questions about her life, her family, her charges, and the like.

16. On or about June 28, 2018, Highsmith called Kernechel into an office where he abruptly kissed her, telling her not to tell anyone or she would go to the Special Housing Unit (SHU), which is the name for confinement.

17. Prisoners at FCI Tallahassee uniformly fear the SHU because of the history of abusive treatment and deprivation experienced in that housing unit.

18. On or about July 5, 2018, Highsmith directed Kernechel to a staff bathroom where he told her to pull her pants down and rubbed her buttocks.

19. Highsmith told Kernechel to bend over and forced his penis into her vagina.

20. From July 2018 to September 2018, Highsmith had several episodes of protected and unprotected oral and vaginal sex with Kernechel.

21. As Kernechel came in from work, Highsmith would routinely kiss her or direct her to a nearby staff bathroom to have sex with her.

22. On one such occasion, Kernechel went to the unit office to make copies and Highsmith instructed her to perform oral sex on him without a condom.

23. Highsmith made clear to Kernechel that he had the power to make her life in prison more difficult if she failed to cooperate or reported the abuse.

24. Highsmith repeatedly threatened Kernechel, telling her if she told anyone about the sexual encounters, he would drive to Louisiana and kill her.

25. Highsmith told her there was another side of him that she didn't want to see.

26. Highsmith threatened to send her to the SHU, which was within his power.

27. Around this time, Highsmith made Kernechel provide him with her medical records to prove that she did not have any sexually transmitted diseases.

28. By reason of her status as a prisoner, Ms. Kernechel was unable to resist this predatory behavior and was initially afraid to report it for fear of retaliation.

29. About September 7, 2018, Highsmith had a sexual encounter with Plaintiff.

30. On September 10, 2018, Highsmith was brought in to be questioned about accusations of sexual abuse by another FCI Tallahassee prisoner.

31. On September 11, 2018, Highsmith was placed under investigation for charges of sexual abuse by another FCI inmate and moved from the Federal Correctional Institution (FCI) to the Federal Detention Center (FDC).

32. Since another victim had come forward, Kernechel felt there was no further need to remain silent and she came forward with her charges of abuse.

33. On September 16, 2018, Kernechel reported the abuse to Captain Profitt who brought in SIS Lieutenant Rivera to take a statement. SIS Lt. Rivera took the statement in a manner that seemed hostile and offensive to Ms. Kernechel.

34. Lt. Riviera stated to Kernechel, "Y'all are the ones causing the drama."

35. Lt. Rivera made Kernechel wish that she had never reported Highsmith.

36. Kernechel was asked by another prison staff member to "let me see your elbows and knees," implying a regular practice of giving oral sex.

37. Kernechel was called in to speak to the prison psychologist, Dr. Rogers.

38. On September 27, 2018, Kernechel was taken to Capital Regional Medical Center but it was long after the last encounter and no evidence remained.

39. On October 16, 2018, Kernechel gave a recorded sworn statement to agents from the Bureau of Prisons Office of the Inspector General.

40. On October 23, 2018, Kernechel asked to be moved from FCI Tallahassee.

41. Prison officials made disparaging comments to Kernechel about her abuse by Highsmith and her request to be transferred to a different prison.

42. Plaintiff was not moved from FCI Tallahassee until after January 22, 2019.

43. Kernechel was made to work outside the gate around Highsmith after reporting him for sexual abuse, though Highsmith was sometimes armed.

44. Kernechel received the impression she was sent out there as bait to see if Highsmith would take some wrongful action to harm her.

45. Prison officials did not act expeditiously to transfer or otherwise protect her or to vindicate her constitutional rights against abuse or intimidation.

46. The acts of the Defendant Highsmith violated Plaintiff's constitutional rights, were wrongful as a matter of both federal and Florida law and without justification under any applicable federal statute or rule.

47. Defendant Highsmith was acting within the course and scope of his employment as a corrections officer at the time of the wrongful acts.

48. Prison officials empowered and abetted Highsmith's abusive acts.

49. FCI Tallahassee had an informal policy of turning a blind eye to abuse and leaving suspected abusers in a position to continue their abusive conduct.

50. Administrators and investigators of FCI Tallahassee have a long history of toleration of sexual abuse of inmates, contraband smuggling, and retaliatory punishment of inmates who complain of mistreatment with only scattered and limited efforts to investigate allegations of abuse or protect inmates.

51. FCI Tallahassee has done little to train or orient officers or inmates to the protections offered under the Prison Rape Elimination Act (PREA).

52. On March 26, 2019, Plaintiff served a claim in writing to the Federal Bureau of Prisons, U.S. Department of Justice, for administrative determination.

53. Plaintiff received notice from the Southeast Regional Counsel on March 27, 2019, that her tort claim was accepted for filing on March 26, 2019.

**First Amendment Violation and Witness Intimidation**

54. Prisoners' First Amendment rights to communicate with counsel have been frequently abused by FCI Tallahassee and the Bureau of Prisons.

55. These rights belong to Plaintiff and not to her attorneys and their staff.

56. Plaintiff's attorneys have been doing sexual misconduct cases for over 15 years, well before the 2006 shoot-out between sexual predator FCI Tallahassee prison guards and the FBI, which claimed two lives.

57. In the course of the preparation of this case, the Plaintiff's counsel have been routinely obstructed, mistreated and discriminated against by FCI officials.

58. Plaintiff's counsel are not treated on the same basis as U.S. Attorneys.

59. Plaintiff's counsel have been turned away from scheduled interviews with clients and witnesses, physically searched, and had their official mail opened by prison staff outside the presence of their addressee clients.

60. Plaintiff is concerned that this pattern of behavior will continue.

61. Plaintiff has been forced to meet with her counsel in a public place without any provisions for privacy while, on information and belief, counsel for the United States are given convenient private facilities for interviews.

62. It has been the custom of U.S. officials, perhaps unofficial, to place victims and witnesses to facts relating to sexual abuse in confinement, make threats against them, and often summarily transfer them far from loved ones.

63. It has also been the custom of U.S. Officials to take an accusatory tone and force witnesses to endlessly repeat descriptions of abuse.

64. These dislocations have a very powerful impact on the willingness of prisoner witnesses to come forward and expose misconduct since they threaten the stability of a prisoner's living situation in a material way.

65. BOP officials have promised to "safeguard" prisoner whistleblowers in a way that is non-punitive but have generally not done so.

66. Although FCI Tallahassee passed a Prison Rape Elimination Act (PREA) audit in 2015, most of the posters giving inmates phone numbers to report sexual abuse were only put up days before the auditors arrived.

67. The ongoing intimidation tactics have a powerful impact on witnesses and send the message that they should forget what they saw and heard when litigation is initiated and they are called for deposition and trial.

68. These tactics have been used in the instant case and have had the foreseeable effect of intimidating and silencing witnesses and chilling the Plaintiff's First Amendment right to redress grievances.

69. The transfers do not moot the harmful effect of the intimidation tactics and interference on prisoners' First Amendment expression since they are an integral part of the intimidation tactics against victims and witnesses.

**Causes of Action**

**I.    Cruel and Unusual Punishment (Eighth Amendment) Highsmith**

70.  Plaintiff re-alleges the Common Allegations as if fully set forth herein.

71.  Plaintiff Kernechel is entitled to relief against Defendant Highsmith because on numerous occasions he violated her Eighth Amendment rights by performing coercive sexual acts involving sexual penetration.

72.  Defendant Highsmith intended to cause this harmful and offensive contact with Kernechel in that the sexual acts were deliberate and in that Highsmith made clear that he had the power to make her prison life harder.

73.  Plaintiff possessed no power to consent to the sexual abuse.

74.  The abuse of Plaintiff by Highsmith was accomplished under color of law.

75.  The abuse deprived Plaintiff of rights, privileges or immunities secured to her by the Eighth Amendment to the U.S. Constitution.

76.  Severe and repeated sexual abuse is not part of the penalty criminal offenders pay for their offenses against society and constitutes a cognizable claim of cruel and unusual punishment under the Eighth Amendment.

77.  As a result of the abuse of Plaintiff by Defendant Highsmith, Plaintiff suffered physical pain and trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anxiety, depression, fear,

strain in relationships, oppressive conditions of confinement, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory and punitive damages and costs against Defendant HIGHSMITH, and such other relief as justice may require.

## II.    Federal Tort Claims Act Claim (Negligence) as to the United States

78.  Plaintiff re-alleges the Common Allegations as if fully set forth herein.

79.  Plaintiff is entitled to relief against Defendant, United States of America because it breached its duty of care to Plaintiff, an inmate in its care and custody, in that it negligently operated and managed FCI Tallahassee by:

a.  Hiring, retaining and entrusting Defendant Highsmith who is, and was or should have been known to Defendant to be of such poor moral character, temperament, and disposition as to be unfit to be hired and retained as a corrections officer and placed in charge of the Plaintiff.

b.  Placing Highsmith in a favorable position to prey on vulnerable prisoners with maximum opportunity to abuse prisoners and cover up abuse.

c.  Failing to transfer or otherwise protect Plaintiff and exposing her to danger after being aware of Highsmith's predatory behavior.

d.  Failing to implement such policies and procedures for the operation and management of FCI Tallahassee as would reasonably protect Plaintiff and others detained or incarcerated in the corrections facility from Defendant Highsmith or other predatory corrections facility employees.

e.  Failing to properly and expeditiously supervise, investigate, and review the operation and management of the corrections facility and the activities and performance of Defendant Highsmith as an employee.

f.  Failing in the course of its investigation of the sexual abuse of other inmates to protect subsequent victims like Kernechel.

g.  Failing in the course of its investigation of Highsmith's sexual abuse of Kernechel to protect other inmates pursued by Highsmith.

80. The negligence of Defendant United States of America was wrongful as a tort under the law of Florida and of the United States and without excuse or justification under any applicable state or federal statute or rule.

81. As a result of the wrongful acts of Defendant United States of America, Plaintiff suffered physical trauma and invasion of her person, suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

### III.   Federal Tort Claims Act (Battery) as to Defendant United States

82. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

83. Plaintiff is entitled to relief against the United States of America because Defendant Highsmith sexually battered her under the color of law as a law enforcement officer of the United States.

84. Defendant Highsmith performed sexual acts on Plaintiff against her will and without her freely-given consent and such acts were wrongful as a tort under the law of Florida and of the United States and without justification or excuse under any applicable state or federal statute or rule.

85. In committing the abuse, Defendant Highsmith was acting within the course and scope of his employment with Defendant United States of America, using the badges of coercive authority given him by his employers.

86. As a result of the abuse by Defendant Highsmith, Plaintiff suffered physical pain and trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anxiety, depression, fear, strain in relationships, oppressive conditions of confinement, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

## IV.   Federal Tort Claims Act (Injunctive Relief) as to the United States

87. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

88. Plaintiff is entitled to injunctive relief against the United States of America because the United States has interfered with her First Amendment right to consult legal counsel and redress grievances through counsel.

89. Defendant United States has sought to intimidate, interfere with, and impede Plaintiff's access to her attorneys and compromised the confidentiality of her meetings and communications with her attorneys.

90. Defendant United States has used threats, confinement, and transfers to intimidate the Plaintiff and her witnesses and to discourage truthful testimony by witnesses to the abuses suffered by Plaintiff.

91. As a result of these wrongful acts by the United States, Plaintiff has suffered and will suffer violations of her constitutional rights now and in the future, which violations are likely to cause irreparable injury.

92. Plaintiff therefore seeks the following injunctive relief:

   a. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs by threats, confinement, and transfers.

   b. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs' witnesses by threats, confinement, and transfers.

   c. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of delaying and otherwise impeding Plaintiff's private communication with counsel.

   d. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of enabling, warning, and covering up for sexual predators in uniform.

   e. A plan of training and supervision of prison staff to require the U.S. Bureau of Prisons to treat Plaintiff's counsel on the same basis, affording them the same courtesies and facilities as counsel for the United States.

93. Plaintiff submits that there is a strong likelihood of success on the merits since Highsmith has already been subject to settled litigation on the same issues with compromising video and other substantial evidence.

94. The sexual abuse of a vulnerable prisoner who has been entrusted to the care and custody of the U.S. Bureau of Prisons can constitute irreparable harm.

95. The Burden on the United States would not be great because these are things that it has always had a constitutional duty to do.

96. The public interest would be well-served in bringing an end to a malignant tradition at FCI Tallahassee that has taken at least two lives and blighted the lives of many more vulnerable women prisoners at FCI Tallahassee.

WHEREFORE, Plaintiff seeks injunctive relief and costs against Defendant UNITED STATES OF AMERICA.

## **Prayer for Relief**

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A. That the Court assume jurisdiction over this action;

B. Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and Laws of the United States and Florida;

C. Grant meaningful injunctive relief to protect Plaintiff herein;

D. Award compensatory damages against each of the defendants herein;

E. Award punitive damages against Individual Defendants under federal law;

F. Provide a trial by jury on all issues so triable;

G. Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/James V. Cook*_____
JAMES V. COOK, ESQ.
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Fax: 850 561-0836

RICHARD E. JOHNSON, ESQ.
Florida Bar Number 858323
Law Office of Richard E. Johnson
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 425-1997; 561-0836 fax

Attorneys for Plaintiff

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Bureau of Prisons<br>Southeast Regional Office<br>3800 North Camp Creek Parkway S.W., Bldg. 2000<br>Atlanta, GA 30331-6226 | Wendy Kernechel c/o James Cook, Esq.<br>Law Office of James Cook<br>314 West Jefferson Street<br>Tallahassee, FL 32301 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>01/02/1984<br>01/02/1984 | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE EXHIBIT A, ATTACHED HERETO

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE EXHIBIT A, ATTACHED HERETO

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| SEE EXHIBIT A, ATTACHED HERETO | |

**12.** (See instructions on reverse).        **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 5,000,000 | | 5,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*Wendy Kernechel* | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>850-222-8080 | 14. DATE OF SIGNATURE<br>3/14/19 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

**EXHIBIT A**

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

# Exhibit A

**Claim for Injury by Wendy Kernechel, Fed. Reg. No. 14679-078**

**Field 6: Date and Day of Accident.** Incidents occurred during June 28, 2018 through September 7, 2018

**Field 7: Time.** Various times.

**Field 8: Basis of Claim**

(a) On or about June 28, 2018, FCI Tallahassee Corrections Officer Highsmith approached claimant Wendy Kernechel. She worked as a unit orderly and he was the Unit Officer. They had spoken previously. After calling her into a nearby hallway and into an office, Highsmith kissed Kernechel, telling her to not tell anyone or she would go the Special Housing Unit (SHU) which is confinement.

(b) On or about July 5, 2018, Highsmith escalated his behavior a week later and directed Kernechel to a staff bathroom, where he ordered her to pull her pants down. Highsmith rubbed her buttocks and ordered her to bend over. He forced his penis into her vagina. She is unsure if he wore a condom.

(c) From July 2018 through September 2018, Highsmith had both protected and unprotected oral and vaginal sex with Kernechel on more than 10 occasions. On one occasion, Kernechel went to the unit office to make copies and Highsmith made her perform oral sex without protection. As she came in from work, Highsmith would kiss her or direct her to the staff bathroom to have sex.

(d) Over the months from July through September 2018 Highsmith asked Kernechel many personal questions, including questions about her charges, her family, and the area where she lived. Later, Highsmith told her that if she ever told about the sexual encounters, he would drive to Louisiana and kill her. Highsmith told Kernechel that there was another side of him that she didn't want to see.

(e) From on or about July 5, 2018, through on or about September 7, 2018, Kernechel was pressured to have sex with Highsmith, involving the penetration of her mouth and vagina, at various locations at FCI Tallahassee. Highsmith extorted Kernechel's compliance with the sexual acts and silence by threats and coercion.

(f) Ms. Kernechel believes that September 7, 2018, was the last sexual encounter.

(g) On September 10, 2018, Highsmith was brought in to be questioned about an incident with another prisoner.

(h) On September 11, 2018, Highsmith was moved to from the Federal Correctional Institution (FCI) to the Federal Detention Center (FDC) under investigation for accusations of sexual abuse by another female FCI inmate.

(i) On or about September 26, 2018, Kernechel reported Highsmith's sexual abuse to Captain Profit who brought in SIS Lt. Rivera to take a statement. During her statement, Rivera would ask questions like, "Did you have feelings for Highsmith? Were you jealous?" He then made the statement, "I know what this is about." Kernechel had told Rivera about another officer, Richardson, who was making sexual comments toward her. Rivera said, "Don't have sex with him too. I feel the need to tell you this."

(j) On or about September 27, 2018, Kernechel was called in to speak with the chief psychologist, Dr. Rogers. Kernechel was asked by her to give a brief description of what took place. Kernechel was then sent to Capital Regional Medical Center for STD testing.

(k) On or about October 16, 2018, Kernechel was called in to speak with a female agent from the Office of Inspector General (OIG), named Riley, and a male agent, name unknown, who took a recorded sworn statement about the sexual abuse. After the statement, Lt. Rivera spoke with Kernechel about other inmates who had witnessed events, and who were also there to speak to OIG. Kernechel used the word "drama" in describing her concerns and Lt. Rivera responded, "Y'all are the ones causing the drama." Kernechel started crying and said she felt like she should never have come forward because of the "backlash." Rivera said she shouldn't feel like that.

(l) On or about October 23, 2018, Kernechel communicated with chief psychologist Dr. Rogers to talk about how Lt. Rivera was making her feel with his comments. Kernechel asked her to speak to the Warden about allowing her to transfer to another camp. After speaking to Dr. Rogers, Kernechel was sitting on a bench and Lt. Rivera asked if she was there to see him. Kernechel said no but that she would like to speak to him. Kernechel told Rivera that

his comments made her feel she shouldn't have come forward and Rivera responded that it angers him when these things happen and that they wait weeks or months for inmates to come forward.

(m) On or about November 8, 2018, Kernechel spoke with Dr. Rogers about comments made by prison staff toward her. Kernechel said that staff person, Ms. Boyd, told her, "Kernechel, let me see your elbows and knees" (which Kernechel construed as a comment on her having oral sex).

(n) Kernechel was still being sent outside the gate while Highsmith was working there, including perimeter duty for which Highsmith was carrying a loaded firearm. Kernechel believes she was kept outside for "bait." Kernechel later found out that BOP was sued in another sexual abuse case involving Highsmith and she heard he had been reprimanded for sexual abuse.

(o) Executive staff, executive staff made little to no effort to separate or limit Highsmith's ability to interact with Kernechel. Executive staff repeatedly ignored, disregarded, or moved slower than usual to address Kernechel's safety, physical health, mental health, and requests for transfer away from the facility where Highsmith worked.

(p) Administrators and investigators of FCI Tallahassee have a long history of toleration of sexual abuse of inmates, contraband smuggling, and retaliatory punishment of inmates who complain of mistreatment with only scattered and ineffective efforts to investigate allegations of abuse or protect inmates.

(q) FCI Tallahassee has done little to train or orient officers or inmates to the protections offered under the Prison Rape Elimination Act (PREA).

**Field 10: Extent of Injury**

Ms. Kernechel has been humiliated, has suffered serious anxiety attacks, deprived of sleep rest, and peace; has become isolated in the prison environment; deprived of opportunities; suffered anxiety, depression, fear, humiliation, strain in family relationships, oppressive conditions of incarceration; retaliation by prison staff and other prisoners.

**Field 11: List of Witnesses**

| | |
|---|---|
| Ames, Unit Officer | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Barnett, Ashley, # 60509-018 | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Brannon, Stan | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Bryant, Mr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Chukes, Ofcr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Coil, Warden | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Collins, Asst Warden | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Colon-Rivera, Ms. (fnu), inmate | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Correia, Maria, # 54939-083 | Aliceville FCI, 11070 Highway 14, Aliceville, AL 35442, 205-373-5000 |
| Felicia, Ms. (lnu) | Refuge House |
| Haynes, Donna, # 32904-171 | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Hunter, Ms. (case mgr) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Jimmy Highsmith | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Lei, Dr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Morgan, Kristan, ARNP | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Pride, Ms. (Case Mgr.) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Profit, Capt. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Richardson, Ofcr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Riley, (fnu) | Officer of Inspector General |
| Rivera, Lt. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Rogers, Dr. (psychologist) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Sanders, Jennifer, #76263-051 | FPC Bryan, Post Office Box 2149, Bryan, TX 77805 |