# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

WENDY KERNECHEL,

     Plaintiff,

v.

UNITED STATES OF AMERICA and
OFFICER JIMMY HIGHSMITH,

     Defendants.

Case No. 4:20-cv-78-WS-MJF

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges as follows:

### Jurisdiction

1. This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and 28 U.S.C. §2671, et. seq., Federal Tort Claims Act.

2. Plaintiff filed a claim under the Federal Tort Claims Act that was accepted for filing on March 26, 2019 (attached as Exhibit A), which claim was not honored within six months.

3. Plaintiff has exhausted her available administrative remedies and obtained all the relief that the administrative remedies could afford.

4. Plaintiff has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

## Parties

5.   At all times material hereto, Plaintiff WENDY KERNECHEL was an inmate of the Bureau of Prisons (BOP), confined in Federal Corrections Institution Tallahassee (FCI Tallahassee) within the Northern District of Florida.

6.   At all times material hereto, Defendant JIMMY HIGHSMITH was a unit officer at FCI Tallahassee, in the Northern District of Florida.

7.   At all times material hereto, Defendant UNITED STATES OF AMERICA owned and operated a corrections facility known as FCI Tallahassee and were the employers of Defendant JIMMY HIGHSMITH.

## Common Allegations of Fact

8.   During the year 2018, Plaintiff WENDY KERNECHEL was an inmate at FCI Tallahassee, a federal corrections facility under the care and custody of that facility and was a person to whom Defendants owed a duty of care.

9.   During 2018, Defendant Jimmy Highsmith was a corrections officer at FCI Tallahassee with duties involving the care and custody of Ms. Kernechel.

10.  Empowered by his position and abetted by other prison officials, Highsmith took the opportunity to have sexual intercourse with Ms. Kernechel on at least ten occasions between July and September of 2018.

11.  Highsmith had a longstanding and known practice of propositioning young female inmates at FCI with a combination of favors, threats, and force.

12. Prison security was aware of credible evidence of abuse by Highsmith of several inmates and settled at least one case but continued to employ him.

13. Sometime toward the end of June 2018, Highsmith was assigned as the unit officer where Kernechel worked as a unit orderly.

14. The assignment gave Highsmith a highly favorable opportunity to prey on vulnerable young women with minimal exposure to discovery.

15. Highsmith noticed Kernechel and began speaking with her, asking her personal questions about her life, her family, her charges, and the like.

16. On or about June 28, 2018, Highsmith called Kernechel into an office where he abruptly kissed her, telling her not to tell anyone or she would go to the Special Housing Unit (SHU), which is the name for confinement.

17. Prisoners at FCI Tallahassee uniformly fear the SHU because of the history of abusive treatment and deprivation experienced in that housing unit.

18. On or about July 5, 2018, Highsmith directed Kernechel to a staff bathroom where he told her to pull her pants down and rubbed her buttocks.

19. Highsmith told Kernechel to bend over and forced his penis into her vagina.

20. From July 2018 to September 2018, Highsmith had several episodes of protected and unprotected oral and vaginal sex with Kernechel.

21. As Kernechel came in from work, Highsmith would routinely kiss her or direct her to a nearby staff bathroom to have sex with her.

22. On one such occasion, Kernechel went to the unit office to make copies and Highsmith instructed her to perform oral sex on him without a condom.

**A. Highsmith and Prison Staff Employed Threats and Intimidation**

23. Highsmith made clear to Kernechel that he had the power to make her life in prison more difficult if she failed to cooperate or reported the abuse.

24. Highsmith told her there was another side of him that she didn't want to see.

25. Highsmith repeatedly threatened Kernechel, telling her if she told anyone about the sexual encounters, he would drive to Louisiana and kill her.

26. Under 18 U.S.C. § 2241(a)(2), one who causes another person in a federal prison to engage in a sexual act by threats of death, serious bodily injury, or attempts to do so may be sentenced to life in prison.

27. Bureau of Prisons employees must certify that they have been informed of the penalties for sexual offenses and that "[t]here is never such a thing as consensual sex between staff and inmates." Program Statement 3420.11.

28. Highsmith threatened to send her to the SHU, which was within his power.

29. Around this time, Highsmith made Kernechel provide him with her medical records to prove that she did not have any sexually transmitted diseases.

30. By reason of her status as a prisoner, Ms. Kernechel was unable to resist this predatory behavior and was initially afraid to report it for fear of retaliation.

31. About September 7, 2018, Highsmith had a sexual encounter with Plaintiff.

32. On September 10, 2018, Highsmith was brought in to be questioned about accusations of sexual abuse made by another FCI Tallahassee prisoner.

33. On September 11, 2018, Highsmith was placed under investigation for charges of sexual abuse by another FCI inmate and moved from the Federal Correctional Institution (FCI) to the Federal Detention Center (FDC).

34. Since another victim had come forward, Kernechel felt there was no further need to remain silent and she came forward with her charges of abuse.

35. On September 16, 2018, Kernechel reported the abuse to Captain Proffitt who brought in SIS Lt. Rivera to take a statement. SIS Lt. Rivera took the statement in a manner that seemed hostile and offensive to Ms. Kernechel.

36. Lt. Riviera stated to Kernechel, "Y'all are the ones causing the drama."

37. Lt. Rivera made Kernechel wish that she had never reported Highsmith.

38. Kernechel was later asked by another prison staff member to "let me see your elbows and knees," implying a regular practice of giving oral sex.

39. Kernechel was called in to speak to the prison psychologist, Dr. Rogers.

40. On September 27, 2018, Kernechel was taken to Capital Regional Medical Center but it was long after the last encounter and no evidence remained.

41. On October 16, 2018, Kernechel gave a recorded sworn statement to agents from the Bureau of Prisons Office of the Inspector General.

42. On October 23, 2018, Kernechel asked to be moved from FCI Tallahassee.

43. Prison officials made disparaging comments to Kernechel about her abuse by Highsmith and her request to be transferred to a different prison.

44. Plaintiff was not moved from FCI Tallahassee until after January 22, 2019.

45. Kernechel was made to work outside the gate around Highsmith after reporting him for sexual abuse, though Highsmith was sometimes armed.

46. Kernechel received the impression she was sent out there as bait to see if Highsmith would take some wrongful action to harm her.

47. Prison officials did not act expeditiously to transfer or otherwise protect her or to vindicate her constitutional rights against abuse or intimidation.

**B. Highsmith Had A History of Sexually Abusing Inmates**

48. Prison officials empowered and abetted Highsmith's abusive acts.

49. FCI Tallahassee had an informal policy of turning a blind eye to abuse and leaving suspected abusers in a position to continue their abusive conduct.

50. Highsmith and the United States were previously sued on a claim of sexual abuse by Highsmith of another inmate, Tabitha White, on April 30, 2014.

51. Video shows White coming and going from Highsmith's darkened office.

52. Several inmates witnessed Highsmith with Inmate White inside the darkened office in C-Unit in what appeared to be a sexual encounter.

53. The internal investigation found a second allegation against Highsmith by a female prisoner who was subsequently deported to Honduras.

54. The Honduran inmate testified that Highsmith sexually assaulted her on March 14, 2014 in a bathroom, also in C-Unit where Highsmith worked.

55. An inmate testified Highsmith was sexually involved with a third inmate.

56. Highsmith denied he sexually abused any inmates but admitted he had been in his office with the first inmate with the door closed and the lights off.

57. The Department of Justice Office of Inspector General report concluded that Highsmith had probably had sexual contact with two of the inmates.

58. The OIG also concluded Highsmith had been untruthful in his testimony.

59. The U.S. Attorney's Office for the Northern District of Florida declined to criminally prosecute Jimmy Highsmith.

60. The lawsuit on the April 30, 2014 case settled for a substantial sum.

61. Highsmith was suspended for ten days for the "appearance" of sexual misconduct by the Warden of FCI Tallahassee.

62. Highsmith continued to have access to female inmates, including Plaintiff.

63. Highsmith continued to work at FCI Tallahassee until sometime in 2019, after a Federal Tort Claim was filed by the Plaintiff in the instant case.

64. Prison officials at FCI Tallahassee declined to say where Highsmith had gone but he was found working in another federal prison in Mississippi.

65. Administrators and investigators of FCI Tallahassee have a long history of toleration of sexual abuse of inmates, contraband smuggling, and retaliatory

punishment of inmates who complain of mistreatment with only scattered and limited efforts to investigate allegations of abuse or protect inmates.

66. FCI Tallahassee has done little to train or orient officers or inmates to the protections offered under the Prison Rape Elimination Act (PREA).

67. On March 26, 2019, Plaintiff served a claim in writing to the Federal Bureau of Prisons, U.S. Department of Justice, for administrative determination.

68. Plaintiff received notice from the Southeast Regional Counsel on March 27, 2019, that her tort claim was accepted for filing on March 26, 2019.

**C. Additional Episodes of Sexual Abuse by Officer Highsmith – J.P.**

69. Even after his first assault on Plaintiff Kernechel, Highsmith continued to assault other women at FCI Tallahassee at the same time.

70. In June of 2018, after escorting an inmate to make a phone call to her mother on the news of the death of her brother, Highsmith sexually assaulted her.

71. Highsmith told the inmate, referred to as "J.P." "you know you have to pay for that call." He then pulled down her pants and raped her anally.

72. J.P. did not immediately report the rape because she feared retaliation by Highsmith and other corrections officers, and placement in the SHU.

73. J.P. finally reported the anal rape on July 14, 2018 to Lt. King, whereupon she was taken to the emergency room for a rape examination.

74. After the rape examination, emergency room physician Dr. James Barr

actually called FCI Tallahassee to speak with the Warden about the rape.

75. After reporting the rape by Highsmith, J.P. was threatened by another inmate and on reporting this to an officer, he said, "May the best woman win."

76. During the investigation, J.P. spent 20 days in the SHU, lost 27 days good time, and lost her place in the drug counseling program.

77. During the investigation, Officer Highsmith continued to have access to female inmates and continued to sexually assault Plaintiff herein.

78. Highsmith was actually assigned to guard J.P. in the SHU for a time.

79. J.P. requested a transfer away from Highsmith but the request was denied.

80. After her request for a transfer, J.P. was returned to the SHU.

**D. Additional Episodes of Sexual Abuse by Officer Highsmith – J.C.**

81. Near the end of July 2018, while he was still sexually assaulting Plaintiff, Officer Highsmith also targeted an inmate referred to as J.C.

82. J.C. sought to avoid Highsmith by conspicuously keeping her distance from Highsmith while he was on duty in her housing unit, D-Unit.

83. During his shift, Highsmith was the only officer directly supervising D-Unit and had control over forms and female hygiene items in his office.

84. In mid-August of 2018, J.C. reported to Highsmith's office in D-Unit to request hygiene products and a form she needed to enroll in a class.

85. As she came to his door, Highsmith grabbed J.C. by her jaw, his thumb and forefinger digging into her cheeks, and forcefully kissed her.

86. J.C. broke loose and returned to her living area.

87. J.C. did not report the assault because she was afraid of retaliation.

88. In late August 2018, Highsmith ordered J.C. to come to his office, a command she was required to obey on pain of discipline.

89. Highsmith trapped J.C. in the hallway and began to fondle her breasts.

90. J.C. now abandoned social and educational activities and spent days sleeping in her bunk, pretending to be sick, to avoid Highsmith.

91. On September 13, 2018, Highsmith woke J.C. up and told her to go to the guard's office because "Officer Brown wants to see you," grabbing her arm.

92. Once in the corridor, Highsmith pushed J.C. into the staff bathroom and pushed her head down and violently forced his penis into her mouth.

93. Highsmith then shoved her backwards into the toilet, pulled one pantleg off, lifted her leg up and raped her vaginally, ejaculating into toilet paper.

94. While this was going on, Officer Love was banging on the bathroom door. He told Highsmith they were "all going up" to the Lieutenant's office.

95. J.C. was taken to the SHU where she was kept for a week.

96. On Friday, September 21, 2018, J.C. sent word to Lt. Rivera that she wanted to tell him about the sexual assault but he did not respond.

97. On Monday, J.C. decided to go to the Warden and SIS Officer Proffitt.

98. Both of them knew it was the second time in two months that Highsmith had raped an inmate and that J.C., like J.P., had to be taken for a rape exam.

99. Despite the reports of Tabitha White, the Honduran deportee, J.P., J.C., and Plaintiff herein, Highsmith continued to sexually assault women until he finally transferred to another federal prison.

### E. First Amendment Violation and Witness Intimidation

100. Prisoners' First Amendment rights to communicate with counsel have been frequently abused by FCI Tallahassee and the Bureau of Prisons.

101. These rights belong to Plaintiff and not to her attorneys and their staff.

102. Plaintiff's attorneys have been doing sexual misconduct cases for over 15 years, well before the 2006 shoot-out between sexual predator FCI Tallahassee prison guards and the FBI, which claimed two lives.

103. In the course of the preparation of this case, the Plaintiff's counsel have been routinely obstructed, mistreated and discriminated against by FCI officials.

104. Plaintiff's counsel are not treated on the same basis as U.S. Attorneys.

105. Plaintiff's counsel have been turned away from scheduled interviews with clients and witnesses, physically searched, and had their official mail opened by prison staff outside the presence of their addressee clients.

106. Plaintiff is concerned that this pattern of behavior will continue.

107. Plaintiff has been forced to meet with her counsel in a public place without any provisions for privacy while, on information and belief, counsel for the United States are given convenient private facilities for interviews.

108. It has been the custom of U.S. officials, perhaps unofficial, to place victims and witnesses to facts relating to sexual abuse in confinement, make threats against them, and often summarily transfer them far from loved ones.

109. It has also been the custom of U.S. Officials to take an accusatory tone and force witnesses to endlessly repeat descriptions of abuse.

110. These dislocations have a very powerful impact on the willingness of prisoner witnesses to come forward and expose misconduct since they threaten the stability of a prisoner's living situation in a material way.

111. BOP officials have promised to "safeguard" prisoner whistleblowers in a way that is non-punitive but have generally not done so.

112. Although FCI Tallahassee passed a Prison Rape Elimination Act (PREA) audit in 2015, most of the posters giving inmates phone numbers to report sexual abuse were only put up days before the auditors arrived.

113. The ongoing intimidation tactics have a powerful impact on witnesses and send the message that they should forget what they saw and heard when litigation is initiated and they are called for deposition and trial.

114. These tactics have been used in the instant case and have had the foreseeable effect of intimidating and silencing witnesses and chilling the Plaintiff's First Amendment right to redress grievances.

115. The transfers do not moot the harmful effect of the intimidation tactics and interference on prisoners' First Amendment expression since they are an integral part of the intimidation tactics against victims and witnesses.

## Causes of Action

### I.   Cruel and Unusual Punishment (Eighth Amendment) Highsmith

116. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

117. Plaintiff Kernechel is entitled to relief against Defendant Highsmith because on numerous occasions he violated her Eighth Amendment rights by performing coercive sexual acts involving sexual penetration.

118. Defendant Highsmith intended to cause this harmful and offensive contact with Kernechel in that the sexual acts were deliberate and in that Highsmith made clear that he had the power to make her prison life harder.

119. Plaintiff possessed no power to consent to the sexual abuse.

120. The abuse of Plaintiff by Highsmith was accomplished under color of law.

121. The abuse deprived Plaintiff of rights, privileges or immunities secured to her by the Eighth Amendment to the U.S. Constitution.

122. Severe and repeated sexual abuse is not part of the penalty criminal offenders pay for their offenses against society and constitutes a cognizable claim of cruel and unusual punishment under the Eighth Amendment.

123. As a result of the abuse of Plaintiff by Defendant Highsmith, Plaintiff suffered physical pain and trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anxiety, depression, fear, strain in relationships, oppressive conditions of confinement, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory and punitive damages and costs against Defendant HIGHSMITH, and such other relief as justice may require.

## II.  Federal Tort Claims Act Claim (Negligence) as to the United States

124. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

125. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with state law.

126. 18 U.S.C. § 4042(a)(2)-(3) requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and "provide for the protection ... of all persons charged with or convicted of offenses against the United States."

127. Plaintiff is entitled to relief against Defendant, United States of America because it breached its duty of care to Plaintiff, an inmate in its care and custody, in that it negligently operated and managed FCI Tallahassee by:

    a. Hiring, retaining and entrusting Defendant Highsmith who is, and was or should have been known to Defendant to be of such poor moral character, temperament, and disposition as to be unfit to be hired and retained as a corrections officer and placed in charge of the Plaintiff.

    b. Placing Highsmith in a favorable position to prey on vulnerable prisoners with maximum opportunity to abuse prisoners and cover up abuse.

    c. Failing to transfer or otherwise protect Plaintiff and exposing her to danger after being aware of Highsmith's predatory behavior.

    d. Failing to implement such policies and procedures for the operation and management of FCI Tallahassee as would reasonably protect Plaintiff and others detained or incarcerated in the corrections facility from Defendant Highsmith or other predatory corrections facility employees.

    e. Failing to properly and expeditiously supervise, investigate, and review the operation and management of the corrections facility and the activities and performance of Defendant Highsmith as an employee.

    f. Failing in the course of its investigation of the sexual abuse of other inmates to protect subsequent victims like Kernechel.

    g. Failing in the course of its investigation of Highsmith's sexual abuse of Kernechel to protect other inmates pursued by Highsmith.

128. The negligence of Defendant United States of America was wrongful as a tort under the law of Florida and of the United States and without excuse or justification under any applicable state or federal statute or rule.

129. As a result of the wrongful acts of Defendant United States of America, Plaintiff suffered physical trauma and invasion of her person, suffered and

continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

### III.    Federal Tort Claims Act (Battery) as to Defendant United States

130. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

131. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with state law.

132. Plaintiff is entitled to relief against the United States of America because Defendant Highsmith sexually battered her under the color of law as a law enforcement officer of the United States.

133. Defendant Highsmith performed sexual acts on Plaintiff against her will and without her freely-given consent and such acts were wrongful as a tort under the law of Florida and of the United States and without justification or excuse under any applicable state or federal statute or rule.

134. In the course of the series of episodes of sexual abuse of Ms. Kernechel by Jimmy Highsmith, the United States aided Highsmith in targeting Ms. Kernechel and other inmates even though the USDOJ OIG believed he had

likely had sexual contact with at least two other women before her.

135. After the episodes of abuse, the United States protected Highsmith, and permitted him to "disappear" from FCI Tallahassee and go work in another federal prison in another part of the United States.

136. In committing the abuse, Defendant Highsmith was acting within the course and scope of his employment with Defendant United States of America, using the badges of coercive authority given him by his employers.

137. In their enabling of inmate abuse, the Defendants have breached PREA by:

   a. §115.11, failing to enforce zero tolerance policy;

   b. §115.13, failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact;

   c. §115.15, permitting improper cross-gender pat downs;

   d. §115.17, hiring, promoting and retaining officers who "may" have had improper sexual contact;

   e. §115.43, punishing sex victims with involuntary segregated housing, loss of privileges and work permits;

   f. §115.61, failing to report suspicion of sexual abuse;

   g. §115.67, failing to protect inmates from retaliation after reporting abuse;

   h. §115.76, failing to discipline staff for sexual misconduct.

138. As a result of the abuse by Defendant Highsmith, Plaintiff suffered physical pain and trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anxiety, depression, fear, strain in relationships, oppressive conditions of confinement, insecurity, self-

revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against

Defendant UNITED STATES OF AMERICA.

## IV.   Federal Tort Claims Act (Injunctive Relief) as to the United States

139. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

140. Plaintiff is entitled to injunctive relief against the United States of America
because the United States has interfered with her First Amendment right to
consult legal counsel and redress grievances through counsel.

141. Defendant United States has sought to intimidate, interfere with, and impede
Plaintiff's access to her attorneys and compromised the confidentiality of her
meetings and communications with her attorneys.

142. Defendant United States has used threats, confinement, and transfers to
intimidate the Plaintiff and her witnesses and to discourage truthful
testimony by witnesses to the abuses suffered by Plaintiff.

143. As a result of these wrongful acts by the United States, Plaintiff has suffered
and will suffer violations of her constitutional rights now and in the future,
which violations are likely to cause irreparable injury.

144. Plaintiff therefore seeks the following injunctive relief:

   a.  A plan of training and supervision of prison staff to prevent the U.S.
       Bureau of Prisons policies, official or unofficial, of retaliating against
       Plaintiffs by threats, confinement, and transfers.

b. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs' witnesses by threats, confinement, and transfers.

c. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of delaying and otherwise impeding Plaintiff's private communication with counsel.

d. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of enabling, warning, and covering up for sexual predators in uniform.

e. A plan of training and supervision of prison staff to require the U.S. Bureau of Prisons to treat Plaintiff's counsel on the same basis, affording them the same courtesies and facilities as counsel for the United States.

145. Plaintiff submits that there is a strong likelihood of success on the merits since Highsmith has already been subject to settled litigation on the same issues with compromising video and other substantial evidence.

146. The sexual abuse of a vulnerable prisoner who has been entrusted to the care and custody of the U.S. Bureau of Prisons can constitute irreparable harm.

147. The Burden on the United States would not be great because these are things that it has always had a constitutional duty to do.

148. The public interest would be well-served in bringing an end to a malignant tradition at FCI Tallahassee that has taken at least two lives and blighted the lives of many more vulnerable women prisoners at FCI Tallahassee.

WHEREFORE, Plaintiff seeks injunctive relief and costs against Defendant UNITED STATES OF AMERICA.

## **Prayer for Relief**

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A. That the Court assume jurisdiction over this action;

B. Declare that the acts and omissions described herein violated Plaintiff's

rights under the Constitution and Laws of the United States and Florida;

C. Grant meaningful injunctive relief to protect Plaintiff herein;

D. Award compensatory damages against each of the defendants herein;

E. Award punitive damages against Individual Defendants under federal law;

F. Provide a trial by jury on all issues so triable;

G. Such further relief as the Court deems just and proper.

Respectfully Submitted,   *s/James V. Cook*
                                                                 JAMES V. COOK, ESQ.
                                                                 Florida Bar Number 966843
                                                                 Law Office of James Cook
                                                                 314 West Jefferson Street
                                                                 Tallahassee, FL 32301
                                                                 (850) 222-8080; 850 561-0836 fax
                                                                 cookjv@gmail.com

                                                                 RICHARD E. JOHNSON, ESQ.
                                                                 Florida Bar Number 858323
                                                                 Law Office of Richard E. Johnson
                                                                 314 West Jefferson Street
                                                                 Tallahassee, Florida 32301
                                                                 (850) 425-1997; 561-0836 fax
                                                                 rick@rej-law.com

                                                                 Attorneys for Plaintiff

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Bureau of Prisons<br>Southeast Regional Office<br>3800 North Camp Creek Parkway S.W., Bldg. 2000<br>Atlanta, GA 30331-6226 | Wendy Kernechel c/o James Cook, Esq.<br>Law Office of James Cook<br>314 West Jefferson Street<br>Tallahassee, FL 32301 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 01/02/1984 | | | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE EXHIBIT A, ATTACHED HERETO

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE EXHIBIT A, ATTACHED HERETO

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| SEE EXHIBIT A, ATTACHED HERETO | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 5,000,000 | | 5,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Wendy Kernechel* | 850-222-8080 | 3/14/19 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**EXHIBIT A**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is *solely* for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

# Exhibit A

**Claim for Injury by Wendy Kernechel, Fed. Reg. No. 14679-078**

**Field 6: Date and Day of Accident.** Incidents occurred during June 28, 2018 through September 7, 2018

**Field 7: Time.** Various times.

**Field 8: Basis of Claim**

(a) On or about June 28, 2018, FCI Tallahassee Corrections Officer Highsmith approached claimant Wendy Kernechel. She worked as a unit orderly and he was the Unit Officer. They had spoken previously. After calling her into a nearby hallway and into an office, Highsmith kissed Kernechel, telling her to not tell anyone or she would go the Special Housing Unit (SHU) which is confinement.

(b) On or about July 5, 2018, Highsmith escalated his behavior a week later and directed Kernechel to a staff bathroom, where he ordered her to pull her pants down. Highsmith rubbed her buttocks and ordered her to bend over. He forced his penis into her vagina. She is unsure if he wore a condom.

(c) From July 2018 through September 2018, Highsmith had both protected and unprotected oral and vaginal sex with Kernechel on more than 10 occasions. On one occasion, Kernechel went to the unit office to make copies and Highsmith made her perform oral sex without protection. As she came in from work, Highsmith would kiss her or direct her to the staff bathroom to have sex.

(d) Over the months from July through September 2018 Highsmith asked Kernechel many personal questions, including questions about her charges, her family, and the area where she lived. Later, Highsmith told her that if she ever told about the sexual encounters, he would drive to Louisiana and kill her. Highsmith told Kernechel that there was another side of him that she didn't want to see.

(e) From on or about July 5, 2018, through on or about September 7, 2018, Kernechel was pressured to have sex with Highsmith, involving the penetration of her mouth and vagina, at various locations at FCI Tallahassee. Highsmith extorted Kernechel's compliance with the sexual acts and silence by threats and coercion.

(f) Ms. Kernechel believes that September 7, 2018, was the last sexual encounter.

(g) On September 10, 2018, Highsmith was brought in to be questioned about an incident with another prisoner.

(h) On September 11, 2018, Highsmith was moved to from the Federal Correctional Institution (FCI) to the Federal Detention Center (FDC) under investigation for accusations of sexual abuse by another female FCI inmate.

(i) On or about September 26, 2018, Kernechel reported Highsmith's sexual abuse to Captain Profit who brought in SIS Lt. Rivera to take a statement. During her statement, Rivera would ask questions like, "Did you have feelings for Highsmith? Were you jealous?" He then made the statement, "I know what this is about." Kernechel had told Rivera about another officer, Richardson, who was making sexual comments toward her. Rivera said, "Don't have sex with him too. I feel the need to tell you this."

(j) On or about September 27, 2018, Kernechel was called in to speak with the chief psychologist, Dr. Rogers. Kernechel was asked by her to give a brief description of what took place. Kernechel was then sent to Capital Regional Medical Center for STD testing.

(k) On or about October 16, 2018, Kernechel was called in to speak with a female agent from the Office of Inspector General (OIG), named Riley, and a male agent, name unknown, who took a recorded sworn statement about the sexual abuse. After the statement, Lt. Rivera spoke with Kernechel about other inmates who had witnessed events, and who were also there to speak to OIG. Kernechel used the word "drama" in describing her concerns and Lt. Rivera responded, "Y'all are the ones causing the drama." Kernechel started crying and said she felt like she should never have come forward because of the "backlash." Rivera said she shouldn't feel like that.

(l) On or about October 23, 2018, Kernechel communicated with chief psychologist Dr. Rogers to talk about how Lt. Rivera was making her feel with his comments. Kernechel asked her to speak to the Warden about allowing her to transfer to another camp. After speaking with Dr. Rogers, Kernechel was sitting on a bench and Lt. Rivera asked if she was there to see him. Kernechel said no but that she would like to speak to him. Kernechel told Rivera that

his comments made her feel she shouldn't have come forward and Rivera responded that it angers him when these things happen and that they wait weeks or months for inmates to come forward.

(m) On or about November 8, 2018, Kernechel spoke with Dr. Rogers about comments made by prison staff toward her. Kernechel said that staff person, Ms. Boyd, told her, "Kernechel, let me see your elbows and knees" (which Kernechel construed as a comment on her having oral sex).

(n) Kernechel was still being sent outside the gate while Highsmith was working there, including perimeter duty for which Highsmith was carrying a loaded firearm. Kernechel believes she was kept outside for "bait." Kernechel later found out that BOP was sued in another sexual abuse case involving Highsmith and she heard he had been reprimanded for sexual abuse.

(o) Executive staff, executive staff made little to no effort to separate or limit Highsmith's ability to interact with Kernechel. Executive staff repeatedly ignored, disregarded, or moved slower than usual to address Kernechel's safety, physical health, mental health, and requests for transfer away from the facility where Highsmith worked.

(p) Administrators and investigators of FCI Tallahassee have a long history of toleration of sexual abuse of inmates, contraband smuggling, and retaliatory punishment of inmates who complain of mistreatment with only scattered and ineffective efforts to investigate allegations of abuse or protect inmates.

(q) FCI Tallahassee has done little to train or orient officers or inmates to the protections offered under the Prison Rape Elimination Act (PREA).

**Field 10: Extent of Injury**

Ms. Kernechel has been humiliated, has suffered serious anxiety attacks, deprived of sleep rest, and peace; has become isolated in the prison environment; deprived of opportunities; suffered anxiety, depression, fear, humiliation, strain in family relationships, oppressive conditions of incarceration; retaliation by prison staff and other prisoners.

**Field 11: List of Witnesses**

| Ames, Unit Officer | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
|---|---|
| Barnett, Ashley, # 60509-018 | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Brannon, Stan | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Bryant, Mr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Chukes, Ofcr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Coil, Warden | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Collins, Asst Warden | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Colon-Rivera, Ms. (fnu), inmate | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Correia, Maria, # 54939-083 | Aliceville FCI, 11070 Highway 14, Aliceville, AL 35442, 205-373-5000 |
| Felicia, Ms. (lnu) | Refuge House |
| Haynes, Donna, # 32904-171 | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Hunter, Ms. (case mgr) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Jimmy Highsmith | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Lei, Dr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Morgan, Kristan, ARNP | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Pride, Ms. (Case Mgr.) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Profit, Capt. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Richardson, Ofcr. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Riley, (fnu) | Officer of Inspector General |
| Rivera, Lt. | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Rogers, Dr. (psychologist) | Tallahassee FCI, 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Sanders, Jennifer, #76263-051 | FPC Bryan, Post Office Box 2149, Bryan, TX 77805 |